## MAXWELL v. PIKE.

Where a town clerk inadvertently gave a defendant a false certificate, at-
tested as a copy of record, in order to support his plea of infancy ; by rea-
son of which the plaintiff was obliged to obtain a continuance of his cause to
the next term, prior to which the debtor died ;—it was holden that the town
clerk was liable to pay the plaintiff the damages occasioned by the delay
and continuance of the action.

Proof of the issuing of a commission of insolvency is the only competent evi-
dence of the insolvency of a deceased defendant, so as to dissolve an attach-
ment of his estate.

THIS was an action of trespass on the case, in which the plain-
tiff declared that on the 30th day of June 1818, one Humphrey
Scammon was indebted to him for goods sold;—that the debt

Maxwell *v.* Pike.

being unpaid, he sued out a writ of attachment *October* 26, 1818, and caused sufficient personal estate to be attached to satisfy his demand ;—that at *April* term 1819, the cause came on to be tried in the Circuit Court of Common Pleas, and the plaintiff proved the sale and delivery of the goods to *Scammon*, and his promise to pay ;—that it became important to shew the time of the birth of *Scammon ;*—and that the defendant being town clerk of the town of *Saco*, falsely and fraudulently gave to said *Scammon* a false certificate under his hand official, stating that said *Scammon* was born *October* 30, 1797, and purporting to be a true copy of the records of the town of *Saco ;* whereas in truth said *Scammon* was born *October* 20, 1797, and so was the town record, then in custody of the defendant ;—that *Scammon's* counsel offered said false certificate in evidence to the jury, whereupon the plaintiff was obliged to move for and did obtain a continuance of his action to the next term of said Court in *September* following ;—but that in the vacation, viz. *August* 25, 1819, *Scammon* died totally insolvent, whereby the plaintiff's attachment was dissolved and his debt lost.

At the trial of this action, upon the general issue, the plaintiff proved his debt against *Scammon*, and his suit, attachment, trial upon the plea of infancy pleaded by *Scammon*, the production of the false certificate to support that plea, its falsehood, and its materiality to the issue, the true record being such as would have proved him of full age at the period in question ;—and he further proved the continuance of the action from *April* to *September* term ; that in the interim the debtor went on a voyage to the West Indies, where he died sometime in *August ;*—and that the action was still pending in the same Court, for the purpose of summoning in an administrator to defend it, but that no administration had yet been granted upon his estate.

It further appeared that *Scammon* applied to the defendant for the certificate, while he was engaged in his ordinary employment at his shop ; which not being willing to leave to go to his house and examine the record, he certified hastily, according as *Scammon* affirmed the truth to be.

The plaintiff then offered parol testimony that *Scammon*, when he died, was poor and left no property ; which was objected to as incompetent, but was admitted by the Judge for the purposes

of this trial, subject to the opinion of the whole Court; and a verdict was thereupon returned, by consent of parties, for the plaintiff, for the entire amount of his debt and costs against *Scammon*, and to be amended or set aside by the whole Court, according to their opinion upon the facts reported as above by the Judge who presided at the trial.

*Shepley*, for the defendant.

1. Parol testimony was incompetent to prove the fact of *Scammon's* insolvency, the law having plain reference to evidence of an higher nature. The attachment of his goods is not dissolved but upon his death, administration granted on his estate, a representation made to the Judge of Probate that the estate was insolvent, and a *commission* of insolvency *duly issued*. This last is an indispensable requisite, and is matter of which *the record is the only evidence.*

2. No commission of insolvency having issued, the plaintiff's attachment is yet in full force on the goods of the debtor, and the debt is abundantly secure. Of course the plaintiff has sustained no damage. The *gravamen* is the death of *Scammon*, not the misconduct of the defendant. It is as if the legislature, pending the action, had passed a law dissolving all attachments, and directing a distribution *pro ratâ* among creditors. There the plaintiff would have lost his debt by the operation of a public law;—here, by the act of God.

3. But if the loss were the result of any act of the defendant in combination with other causes, yet it is a result too remote to bind him. He is answerable only for the natural and necessary, the probable and direct consequences of his act, which the death of *Scammon* surely was not. *Thurston v. Hancock,* 12 *Mass.* 229.

*Emery*, for the plaintiff.

[He was about to argue upon the general questions presented in the case, but was directed by the Court to confine his remarks to the question of damages alone.]

If the plaintiff shews that he is *exposed* to damage in consequence of the defendant's misconduct, the defendant must be answerable for its amount, unless he can shew that the danger

or liability has since been removed. *Sheriffs of Norwich v. Bradshaw, Cro. El.* 53. *Bird v. Randall,* 3 *Burr.* 1345.

And it is sufficient if the loss proceed from the act of the defendant. His penitence, his explanation, and his upright intent, cannot avail him, unless they can be beneficial to the party injured, which in this case they cannot. He gave *Scammon* a false certificate, which enabled him to do mischief; when his duty as town clerk required him to certify the truth at his peril.—3 *East.* 599. *Ogle v. Barnes,* 8 *D. & E.* 188. *Stat.* 1795, *ch.* 41, *sec.* 1. *Lincoln v. Hapgood,* 11 *Mass.* 350.

The case of *Thurston v. Hancock,* shews that full damages are recoverable whenever the plaintiff is not equally in fault, as was the case there. *Thurston* did not recover full damages, because he placed his house too near the verge of his land, thus exposing it by his own act to the subsequent danger from excavation.

The cause being continued *nisi,* the opinion of the Court was delivered as follows, at the succeeding term in *Cumberland.*

MELLEN C. J. It is admitted that the certificate which the defendant signed as town clerk was false; though it appears he was not aware of it at the time; and that a fraud was practised upon him by *Scammon.* Still, as a certifying officer, he must be answerable to the party injured by such false certificate; whether he signed it fraudulently, or through negligence in not examining the records and ascertaining the *fact* which he ought to certify.—The plaintiff is therefore entitled to maintain the present action; and the only question is, what is the measure of damages.

The plaintiff contends that as he secured by attachment on the mesne process against *Scammon,* property sufficient to satisfy the demand against him; and as *Scammon* died several years since, and, according to the parol evidence in the case, *insolvent,* he is entitled in this action to judgment against the defendant for the amount of the full demand, which, it is alleged, is now lost to him. As no administration has ever been granted on *Scammon's* estate, we have no legal means of knowing whether his estate is insolvent.—Such insolvency cannot be proved by parol;—nor can any thing short of a commission of insolvency be competent proof of the dissolution of an attach-

ment on the mesne process against the deceased, according to the provision of the 32d *Sect.* of the act of 1821, *ch.* 60, and to the case of *Rockwood v. Allen, Exr.* 7 *Mass.* 254.

This principle being applied to the present case, it stands on the same ground as it would if *Scammon* were now living; and how could it then be contended that the plaintiff has lost the benefit of his attachment and the amount of his demand?—If the cause had been finally decided at the *April* term, and in consequence of the defendant's false certificate judgment had been rendered in favour of *Scammon,* the plaintiff in this action would be entitled to *full damages*—nothing less would amount to an indemnity.—But the only damage appearing is this, that in consequence of the *false certificate* produced at the trial in *April* 1818, the cause was continued to *September* term following, to obtain proof of its falsity.—This was a *delay* and a *damage* to the plaintiff; for which he is entitled to the damages incident to such delay.—If *Scammon* had not died *before September* term the cause would probably have been finally disposed of at that term.—But it has ever since been continued for want of an administrator on the estate to answer to the suit and defend it.—The defendant is not answerable for the death of *Scammon :* nor for the delay occasioned by *that* or any *other* cause, since existing.—On these principles the verdict is incorrect and must be altered so as to stand for the damages occasioned by the delay and one continuance of the action.—These damages are composed of counsel fees paid at the *April* term by the plaintiff; the travel and attendance of himself and his witnesses at that term, and the expense of obtaining them.—As soon as the counsel have ascertained the amount of these sums, let the verdict be reduced to that amount and judgment be entered thereon.