Fishel et ux., Appellants, *v.* McDonald et ux.

252

Argued April 14, 1948. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and FINE, JJ.

*Fred B. Trescher*, with him *Kunkle, Trescher & Snyder*, for appellants.

*Marquis M. Smith*, for appellees.

OPINION BY RENO, J., July 23, 1948:

Plaintiffs appealed from a decree sustaining preliminary objections to their bill in equity, upon which the court below ruled that "a court of equity has no jurisdiction and that the plaintiffs have a full, adequate and complete remedy at law."

Succinctly stated, the bill averred these facts: In 1928 David A. Hammond conveyed property to plaintiffs, husband and wife, subject to a mortgage given by

Hammond to the Keystone-Westmoreland Building and Loan Association, and plaintiffs gave their mortgage to Hammond for part of the purchase price. Later in 1928 plaintiffs conveyed to defendants, husband and wife, subject to the two mortgages which the grantees assumed and agreed to pay. In 1932 an execution was issued by the building association (whether upon a judgment on the bond or the mortgage does not appear), and at the sheriff's sale the property was purchased by, and conveyed to, the execution-plaintiff. The sale divested the lien of the second, the Hammond, mortgage. In 1933 the building association conveyed the property to one of the defendants, C. Edgar McDonald. Meanwhile the Hammond mortgage had been acquired by the Secretary of Banking, as receiver of the Bloomfield Trust Company of Pittsburgh, who in 1944 entered judgment against plaintiffs upon the accompanying bond.

The averment around which most of our discussion will revolve is: "The plaintiffs aver that the defendants, . . . defaulted in the payments due under said mortgage and acquiesced in said sheriff's sale fraudulently for the purpose of divesting said property of the lien of said second mortgage, and reacquiring title to the same free of said second mortgage, and for the purpose of avoiding liability which they had assumed by said deed. . . . Plaintiffs further aver that they were without knowledge either of said sheriff's sale or of the reconveyance of said property to the said C. Edgar McDonald until about two weeks prior to the filing of this bill. [January 6, 1946]"

Plaintiffs sought, and secured, a preliminary injunction restraining defendants from selling or encumbering the property, and seek a final decree subjecting it to the liens of the Hammond mortgage and the judgment of the Secretary of Banking.

Where a grantee accepts a deed containing an assumption of existing mortgages and agrees to pay them

he becomes personally liable for them, and his liability may be enforced in an action of assumpsit. *Mercer's Est.*, 330 Pa. 475, 199 A. 481; *Blood v. Crew Levick Co.*, 177 Pa. 606, 35 A. 871; *Britton v. Roth*, 313 Pa. 352, 169 A. 146. The agreement to assume and pay imposes upon the grantee the obligation to protect the grantor not only from loss but also from liability, and the grantor may recover as soon as his liability has become fixed and established, even though he has sustained no actual loss or damage at the time he seeks to recover. *Ruzyc v. Brown*, 320 Pa. 213, 181 A. 783. The liability of plaintiffs was fixed by the judgment of the Secretary of Banking, and their right to recover from defendants accrued before they filed their bill.[1] The obligation assumed by the grantee is for the benefit of the mortgagee, and he, or his assignee, may maintain an action thereon upon proof of maturity or default. *Fair Oaks B. & L. Assn. v. Kahler*, 320 Pa. 245, 181 A. 779.

Where, however, the grantor does not seek money damages, but presses for reinstatement of the lien of the mortgage which has been divested through the fraud or collusion of the grantee, he may sue in equity. *Kennedy v. Borie*, 166 Pa. 360, 31 A. 98; *Bowen v. A. R. Boyd Enterprises, Inc.*, 326 Pa. 385, 191 A. 137. This is so, because fraud vitiates everything that it touches, and an allegation of fraud coupled with a prayer for an appropriate and characteristic equitable remedy always calls forth the powers of the chancery court.

---

[1] The appellants' brief states: "At the time the bill was filed, Fishels, the plaintiffs, were defendants in the judgment on the bond accompanying the mortgage. They have since been compelled to pay the judgment in order to free their property from its lien, and the mortgage and judgment have been assigned to them. They are, therefore, squarely in the position of the original mortgagee." Accordingly, in our discussion of some aspects of the case plaintiffs have been regarded as lien holders, assuming that they will so amend their bill.

Act of June 13, 1840, P. L. 666, §39, extended by the Act of February 14, 1857, P. L. 39, §1, 17 PS §§286, 283. "In this Commonwealth chancery always assumes jurisdiction in relief of fraud and this is so whether or not the remedy in equity is more efficacious or adequate than an action at law": *Zoni v. Importers and Exporters Ins. Co. of N. Y.*, 338 Pa. 165, 167, 12 A. 2d 575. See also *Custis v. Serrill*, 303 Pa. 267, 154 A. 487, and *N. Y. Life Ins. Co. v. Brandwene*, 316 Pa. 218, 172 A. 669. "As a general rule courts of equity have jurisdiction to relieve against every species of fraud. . . . Its process is plastic and may be readily modeled to suit the exigencies of the particular case. A court of equity proceeds with but little regard to mere form. It moves with celerity and seizes the fruits of a fraud in the hands of the wrongdoer . . .": *Clauer v. Clauer*, 22 Pa. Superior Ct. 395, 399.

The principles which rule the instant case are illustrated by two authorities we have cited. In the *Kennedy* case, supra, upon a demurrer to a bill, the Supreme Court ruled, in effect, that where one takes title to land subject to two mortgages, he cannot, at a subsequent sale under the first mortgage, buy in the property and hold it divested of the lien of the second mortgage. In that case the defendants bought at the sheriff's sale while here the building association bought. The difference, however, will not defeat plaintiffs' claim if the building association, even though it did not commit fraud, or join in it, nevertheless, pursuant to an arrangement with defendants, bought the property for them and subsequently conveyed it to one of them in furtherance of the agreement. Equity will not be thwarted by a wash sale.

In the *Bowen* case, supra, the holder of a third mortgage alleged that the foreclosure sale by which her mortgage was divested was a fraudulent and collusive arrangement between the holder of a prior encumbrance and the owner of the property having as its

objective the discharge of her mortgage. There, too, the owner, or its nominee representing the same financial interests, subsequently acquired title to property from the purchaser at the sheriff's sale. The chancellor "found that the foreclosure . . . and the conveyance . . . were made in good faith and were without fraud or collusion." The Supreme Court held that the evidence sustained the chancellor's conclusions, and affirmed the dismissal of the bill. But it cannot be doubted that had there been "positive proof of a combination to destroy the second lien" (p. 390), the plaintiff would have secured relief by having the lien of her mortgage reinstated. Mr. Justice BARNES stated the basis for relief at p. 389: "Here . . . *the crucial question is* . . . whether the Fuller executors [holders of the mortgage upon which the execution was issued] and the Boyd interests were in collusion to divest the liens of junior encumbrances." (Emphasis supplied.)

The case is not ruled by *Rauch v. Dech,* 116 Pa. 157, 9 A. 180, and *Rushton v. Lippincott,* 119 Pa. 12, 12 A. 761, relied upon by appellees. In those cases the purchasers at the sheriff's sale were total strangers to the titles, and hence took them divested of the liens which were later sought to be reinstated; and when they subsequently conveyed to the former owners their purchasers took the same titles which they held. In the first case, Luckenbach, whose executors conveyed to the former owner Dech, was not a lien holder, and the court below found (p. 159) that "Mr. Luckenbach, without contemplated fraud, and 'as a matter of charity,' agreed to convey the house and lot to defendant [Dech] at cost." In the second case the purchaser at the sheriff's sale was also not a lien holder. He was (p. 16) the "husband of one of the tenants in common of a barren legal title, cast upon them by descent, and not reduced to possession or recognized by them in any way", and the court below found: "There is no imputation of fraud on his [the husband's] part, nor is it claimed that he

did not buy the land in good faith with his own money."
But the case at bar proceeds upon the theory that the
building association was the nominee of defendants and
bought for them, pursuant to defendants' purpose to
destroy the lien of the second mortgage.

Equity has jurisdiction of this controversy; the law
cannot restore the mortgage as a lien and therefore
does not afford an adequate remedy; and the decree
must be reversed.

Appellees' argument adverted to the defective aver-
ments of the bill but they had not assigned this as a
ground in the preliminary objections. Nevertheless, we
think we should settle the contention. Plaintiffs charge
that defendants "acquiesced in said sheriff's sale fraud-
ulently . . ." Mere acquiescence in a sheriff's sale is
not illegal or fraudulent. However, acquiescence
founded upon a substantial expectation that after the
execution the building association would convey to
defendants does have significance, and when acquies-
cence proceeds from an agreement with the building
association to convey divested of the Hammond mort-
gage it might be fraudulent. But an averment "ac-
quiesced . . . fraudulently" is only an averment of a
conclusion. Plaintiffs must aver the *facts* which con-
stitute the fraud or collusion. *Kittleberger and Evans
v. Home Builders Co.,* 108 Pa. Superior Ct. 264, 164 A.
821. "Such fraud is never to be presumed but must
be proven, and in averring it in a bill of complaint it is
not sufficient to aver the legal conclusion that an act
was fraudulently done or representation fraudulently
made, but the facts which constitute the fraud must be
clearly and explicitly set out, so that the court and
not the pleader may judge whether the act or repre-
sentation complained of was fraudulent or otherwise":
*Rice v. Braden,* 243 Pa. 141, 148, 89 A. 877.

In framing their bill, plaintiffs relied upon the
*Kennedy* and *Bowen* cases, but they misread them.
It is true that in the *Kennedy* case the bill charged

concealment only, and the Supreme Court refused to sustain the demurrer. But this may be attributed to the reluctance of the courts to turn a litigant out of court upon objections to a faulty averment of fraud. (See *Custis v. Serrill,* supra, p. 272). For the Court, in the *Kennedy* case, pointedly stated the only ground upon which a decree could be based, where it said (p. 365) that evidence was admissible "in support of the charge of a *combination between Martin and the other defendants to destroy the lien of the plaintiff's mortgage."* (Emphasis supplied.) It is from that source that Mr. Justice BARNES drew his interpretation of the *Kennedy* case in his opinion in the *Bowen* case. The *Kennedy* and *Bowen* cases differ in their facts and the legal expressions employed in them, and to that extent the *Bowen* case must be held to have modified the earlier case. At this stage of the proceeding, it would seem that the latter applies to the factual situation presented by the instant case. Our order will afford appellants an opportunity to amend their bill.

Pendency of other cases on the law side of the court below between the same parties involving the same assumption and promise, another point argued here but not raised by the preliminary objections, will not be considered on this appeal, except to form the basis of a *caveat.* If it should appear that the identical question has been raised in both forums, plaintiffs might be put to their election, even though equity and the law have concurrent jurisdiction. *Findlay & Hay v. Keim,* 62 Pa. 112; *Mellerio v. Freeman,* 211 Pa. 202, 60 A. 735; *Egan v. United Gas Improvement Co.,* 319 Pa. 17, 178 A. 683; *Holt v. McWilliams,* 21 Pa. Superior Ct. 137. And an adverse decision on the law side might bar recovery in equity. *Kowatch v. Home B. & L. Assn. of Latrobe,* 131 Pa. Superior Ct. 517, 200 A. 111.

The decree is reversed, and the record is remitted to the court below for further proceedings not inconsis-

tent with this opinion; appellants may file an amended bill within 20 days after the record has been returned, subject to provisions of Equity Rule 49; costs to abide the final disposition of the cause.